**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| BRENNA PARADINOVICH, | ) | CASE NO. 1:20-CV-01888-JG |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY | ) | CARMEN E. HENDERSON |
| ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Brenna Paradinovich ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On July 10, 2017, Claimant filed applications for DIB and SSI, alleging a disability onset date of November 20, 2015. (ECF No. 12, ECF PageID #: 228). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, ECF PageID #: 236). On August 28, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF

No. 12, PageID #: 121). On September 27, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 12, PageID #: 101). The ALJ's decision became final on July 10, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID #: 67).

On August 25, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 16). Claimant asserts the following assignment of error:

> The ALJ's finding that Claimant is capable of a range of unskilled, low-stress work is not supported by substantial evidence

(ECF No. 13 at 13).

## III. Background

### A. Relevant Hearing Testimony

Claimant testified that she did not graduate from high school and has an 11th grade education. (ECF No. 12, PageID #: 128). Starting in 2014, Claimant worked at Walmart for about a year. (ECF No. 12, PageID #: 130). Originally, she applied to be a cashier. (ECF No. 12, PageID #: 129). After the first day, however, her supervisors moved her to the dairy department—where she would have less interaction with people—due to her panic attacks. (ECF No. 12, PageID #: 129). She reported having multiple panic attackers per week at work. (ECF No. 12, PageID #: 131). Claimant worked there for about a year before quitting to move in with her sister. (ECF No. 12, PageID #132). There, she took care of her sister's children—a newborn and a four-year-old. (ECF No. 12, PageID #: 132).

Now that the children are both in school, Claimant no longer looks after them. (ECF No. 12, PageID #: 133). She spends the day drawing, on the computer, on social media, and keeping to herself. (ECF No. 12, PageID #: 133, 136). She drives herself to therapy once a week and to the store sporadically. (ECF No. 12, PageID #: 127). Claimant has a bank account and stated she can

pay bills. (ECF No. 12, PageID # 136).

**B. Relevant Medical Evidence**

Claimant has struggled with mental health impairments since her childhood. (ECF No. 12, PageID #: 419). From January 2015 to November 2015, she received telephone therapy from Edith Schroeder, M.S. L.P.C. (ECF No. 12, PageID #: 407–14). During that time, Ms. Schroeder diagnosed Claimant with severe panic agoraphobia and severe social anxiety. (ECF No. 12, PageID #: 412). In November 2015, shortly after moving in with her sister, Claimant stopped therapy. (ECF No. 12, PageID #: 407).

In October 2016, Claimant began in-person therapy with Kendra Yang, MSW, LISW. (ECF No. 12, PageID #: 492). Ms. Yang diagnosed Claimant with post-traumatic stress disorder (PTSD). (ECF No. 12, PageID #: 492). In June 2017, Claimant saw her primary care physician, Dr. Rockenberger, for a checkup. (ECF No. 12, PageID #: 421). She could not explain why she was there but stated she was very anxious. (ECF No. 12, PageID #: 421). Dr. Rockenberger diagnosed severe anxiety, severe depression, and obesity. (ECF No. 12, PageID #: 422). She noted severe behavior disorder, poor communication, and that Claimant could not interact without shaking. (ECF No. 12, PageID #: 422).

In July 2017, Claimant underwent a psychological evaluation by James Clark, Psy.D., regarding an application she submitted for vocational rehabilitation assistance. (ECF No. 12, PageID #: 435). Dr. Clark noted that at the beginning of the evaluation, Claimant showed high anxiety, as demonstrated by hand tremor, marked latency to response, speaking in a hushed tone, and a nervous quality to her voice. (ECF No. 12, PageID #: 438). Her anxiety, however, diminished over the course of the evaluation. (ECF No. 12, PageID #: 438). Dr. Clark diagnosed generalized anxiety disorder with panic attacks, specific learning disorder with impairment in math,

unspecified depressive disorder, unspecified neurocognitive disorder, PTSD, and prominent Cluster C personality traits. (ECF No. 12, PageID #: 442). He also opined that Claimant was not a good candidate to attend college or to attend any specialized vocational training. (ECF No. 12, PageID #: 443). However, he stated that she was a good candidate for select jobs, such as a part-time job at Goodwill Industries Retail Store that would allow her to work by herself. (ECF No. 12, PageID #: 444). He also offered to provide Claimant with a letter supporting her need for testing accommodations for the GED. (ECF No. 12, PageID #: 444).

In August 2017, Opportunities for Ohioans with Disabilities determined Claimant would benefit from vocational rehabilitations services and recommended job development and placement, on-the-job supports, physical and mental restoration, and vocational counseling and guidance. (ECF No. 12, PageID #: 454). Later that month, Ms. Yang indicated that Claimant was very reliable at keeping appointments, cooperative, and capable of banking, paying bills, driving, shopping, performing chores, preparing meals, and maintaining her hygiene. (ECF No. 12, PageID #: 456). She also noted, however, that excessive anxiety in social situations and a poor stress tolerance would prevent Claimant's potential work activities. (ECF No. 12, PageID #: 456).

In October 2017, Claimant established care with Julie Jones, M.D. (ECF No. 12, PageID #: 510). Dr. Jones diagnosed Claimant with anxiety and PTSD. (ECF No. 12, PageID #: 513). Dr. Jones increased Claimant's medication and recommended specialized mental health treatment. (ECF No. 12, PageID #: 506). In January 2018, Claimant started treatment with Roy P. Vellanki, M.D. (ECF No. 12, PageID #: 521). Dr. Vellanki diagnosed panic disorder, PTSD, social anxiety disorder, and autism. (ECF No. 12, PageID #: 596, 580).

Claimant continued to see Ms. Yang for counseling. (ECF No. 12, PageID #: 525). Ms. Yang noted that Claimant had an anxious mood. (ECF No. 12, PageID #: 520). She stated that Claimant

had a fear of bugs that prevented her from sleeping. (ECF No. 12, PageID #: 519). In May 2018, Claimant reported severe panic attacks, but stated they were less frequent than before. (ECF No. 12, PageID #: 521, 550). On May 29, 2018, Claimant applied again for vocational rehabilitation services, reporting that she wanted to get a GED so she could get a job in information technology. (ECF No. 12, PageID #: 719).

### C. Opinion Evidence at Issue

#### 1. State Agency Psychological Consultants

In September 2017, Bruce Goldsmith, Ph.D., reviewed Claimant's medical records. He opined that Claimant should be limited to simple tasks that are not fast paced or have unusual production. (ECF No. 12, PageID #:157). He stated that Claimant was capable of routine changes in the workday but would not perform well in a rapidly changing environment. (ECF No. 12, PageID #: 158). He also opined that Claimant should be limited to occasional and superficial interpersonal contact. (ECF No. 12, PageID #: 157–58). In January 2018, Katherine Fernandez, Psy.D. gave the same opinion. (ECF No. 12, PageID #: 184–91). The ALJ reviewed both opinions and concluded:

> This opinion is supported by and consistent with the evidence of record given the claimant's difficulty with social interaction and cognitive inefficiencies (Exhibits 5F; 11F). Accordingly, the undersigned finds this opinion persuasive, although based on the record as a whole and the claimant's testimony, further restrictions, particularly no interaction with public, are warranted.

(ECF No. 12, PageID #: 112).

#### 2. Treating Psychiatrist — Roy Vellanki, M.D.

Dr. Vellanki treated Claimant for nineteen months. He began treating Claimant on January 29, 2018, after both state agency reviewing psychologists reviewed the record and provided their opinions. (ECF No. 12, PageID #: 583). Claimant reported difficulty with anxiety, depression, and

PTSD. (ECF No. 12, PageID #: 583). She indicated that she had problems with shortness of breath, heart racing, and fainting. (ECF No. 12, PageID #: 583).

On June 13, 2018, Claimant reported broken sleep and stable and unchanged Autism symptoms. (ECF No. 12, PageID #: 539). She stated that her panic disorder symptoms were severe in intensity most nights and in public areas. (ECF No. 12, PageID #: 539). Dr. Vellanki's medical status exam indicated a depressed and anxious mood, a short attention span, and impaired concentration. (ECF No. 12, PageID #: 545–46). He also noted cooperative behavior, average intelligence, and normal memory, speech, insight, judgment, orientation, perception, appearance, and thought process. (ECF No. 12, PageID #: 544–47).

On June 26, 2018, Dr. Vellanki provided his first check-box opinion. (ECF No. 12, PageID #: 535–38). He stated that he treated Claimant monthly and provided counseling and medications. (ECF No. 12, PageID #: 535). He diagnosed Claimant with autism spectrum disorder and PTSD. (ECF No. 12, PageID #: 535). His findings included anxiety, poor eye contact, poor processing of social cues, and poor concentration. (ECF No. 12, PageID #: 535). Claimant's prognosis was poor. (ECF No. 12, PageID #: 535). Dr. Vellanki opined that Claimant's impairments resulted in a moderate limitation in her ability to understand, remember, or apply information and marked limitations in her abilities to interact with others, in maintaining concentration, persistence, or pace, and in adapting or managing herself. (ECF No. 12, PageID #: 537). He also indicated Claimant's impairments would cause her to miss work more than four days per month. (ECF No. 12, PageID #: 538).

In September 2018, Claimant returned to Dr. Vellanki. (ECF No. 12, PageID #: 599). Claimant's mental status examination showed avoidant eye contact, restlessness, mood of irritability, fear, apprehension, and anxiety. (ECF No. 12, PageID #: 604–05). She also had a short

attention span, impaired concentration, and some impairment in insight and judgment. (ECF No. 12, PageID #: 607).

In November 2018, Claimant saw Dr. Vellanki and her symptoms were largely unchanged. (ECF No. 12, PageID #: 611). Claimant stated that her social anxiety was moderate, and her PTSD symptoms were stable. (ECF No. 12, PageID #: 611). Claimant also stated that she had panic attacks once a week. (ECF No. 12, PageID #: 611). Her mental status examination indicated nervous and restless behavior, depressed and anxious mood, short attention span, impaired concentration, and some impairment in insight and judgment. (ECF No. 12, PageID #: 617–19). The examination was otherwise normal. (ECF No. 12, PageID #: 616–19). Dr. Vellanki wrote Claimant a note for GED testing so that Claimant could have more time and a private room to take the test. (ECF No. 12, PageID #: 621). In January 2019, symptoms and medical examinations were largely the same. (ECF No. 12, PageID #: 623). However, Claimant indicated that she had four panic episodes weekly. (ECF No. 12, PageID #: 623).

In April 2019, Claimant reported that her PTSD symptoms were severe, but her social anxiety symptoms were stable. (ECF No. 12, PageID #: 684). Dr. Vellanki's notes indicate that Claimant was regularly taking Prozac Neurontin ablify and tolerating it well. (ECF No. 12, PageID #: 684). Dr. Vellanki's medical status exam indicated avoidant eye contact, a depressed and anxious mood, soft speech, a short attention span, impaired concentration, difficulty acknowledging psychological problems, and some impaired ability to make reasonable decisions. (ECF No. 12, PageID #: 690–92). He also noted cooperative behavior, average intelligence, and normal memory, orientation, associations, appearance, and thought process. (ECF No. 12, PageID #: 689–92).

On July 2, 2019, Dr. Vellanki provided a second checkbox opinion. (ECF No. 12, PageID

#: 668–71). He diagnosed Claimant with autism, PTSD, and panic disorder. (ECF No. 12, PageID #: 668). He listed his clinical findings as high anxiety, poor response to treatment, and hypervigilance. (ECF No. 12, PageID #: 668). He stated Claimant's prognosis was poor. (ECF No. 12, PageID #: 668). He opined that Claimant had marked limitations in her abilities to understand, remember, or apply information and in maintaining attention, concentration, persistence or pace and extreme limitations in her abilities to interact with others and to adapt or manage herself. (ECF No. 12, PageID #: 670). He again indicated that Claimant's impairments would cause her absence from work more than four days per month. (ECF No. 12, PageID #: 671).

The ALJ found that Dr. Vellanki's opinions were not persuasive. (ECF No. 12, PageID #: 113). The ALJ explained:

> Dr. Vell[a]nki indicates significant functional restrictions that are not supported by or consistent with the evidence. While the record does reflect the claimant's difficulties with social interaction, the evidence indicates that claimant is capable of interacting with her family and perform[ing] activities of daily living that require greater functional ability than that expressed by Dr. Vell[a]nki. His own treatment notes indicate the claimant tolerated her medication and experienced stabilization and improvement of symptoms (Exhibits 9E, 12F, 13F, 14F, 17F).

(ECF No. 12, PageID #: 113).

### 3. Treating Therapist — Kendra Yang, MSW, LISW

In August 2018, Ms. Yang completed a checkbox medical-source statement. (ECF No. 12, PageID #: 515–18). She indicated that Plaintiff's impairments resulted in marked limitations in the broad functional areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace; and extreme limitations in the broad functional areas of interacting with others and adapting or managing herself. (ECF No. 12, PageID #: 517). She also opined that Plaintiff's impairments resulted in such marginal adjustment that even a minimal increase in

mental demands or change in environment would cause decompensation and result in a complete inability to function independently outside her home (ECF No. 12, PageID #: 517). In addition, she indicated Plaintiff's impairments would cause more than four absences per month. (ECF No. 12, PageID #: 517).

The ALJ concluded that Ms. Yang's opinion was not persuasive, explaining:

> With respect to the statements provided by the claimant's therapist, Kendra Y[ang], MSW, LISW, the extreme and marked functional limitations she expresses are not supported by her own clinical observations and treatment notes as she indicates that the claimant is capable of a variety of [daily] activities . . . such as, preparing food, maintaining personal hygiene, banking, paying bills and keeping appointments (Exhibits 7F; 10F/2-5). The significant limitations expressed by Ms. Young are not consistent with the record as a whole given the claimant's improved mental health symptom with treatment including decreased frequency of panic attacks, nightmares and intrusive thoughts (Exhibits 8F, 11F, 12F, 17F). Thus, Ms. Young's opinion is not persuasive.

(ECF No. 12, PageID #: 112).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climbing ladders, ropes or scaffolds; never work at unprotected heights or near dangerous machinery and no commercial driving. The claimant is further limited to performing simple, routine, repetitive tasks that are not fast paced and have no strict production quotas; work in a relatively static work environment with routine changes in the work setting; no interaction with the public; occasional interaction with co-workers, but no tandem or shared tasks or conflict resolution, confrontation, negotiation, arbitration, mediation or supervision of others and occasional interaction with supervisors, but no over-the-shoulder supervision.

(ECF No. 12, PageID #: 110). The ALJ reasoned:

The claimant has mental impairments that reasonably cause some functional limitations. Treatment records document essentially conservative and routine mental health treatment, yet generally not the type of treatment one would expect for a totally disabled individual. Although at times she presented with symptoms of depression of anxiety, her symptoms appear to be stabilize[d] with the optimal dose and combination of medication along with regular counseling (see e.g., Exhibits 8F/8; 9F/5; 11F/16; 12F/1, 13, 25; 14F/18; 17F/1). Recent treatment notes indicate that the claimant's medications are "good," her PTSD symptoms are stable and her panic symptoms are limited (Exhibit 17F/1). She related to her primary care provider that she felt better since establishing with a psychiatrist and starting a new medication regimen (Exhibit 9F/5). While at times, the claimant presented as anxious and sad, increasing symptoms were typically noted in light of situational stressors or medication changes (Exhibits 8F/1, 3; 14F/18). For example, at a counseling session after the claimant stopped taking her medication, she expressed that she was "not doing well" and endorsed more panic and anxiety. Once she was resumed her medication, she was noted to be in a better mood and more cooperative (Exhibit 1F/9-10). On another occasion, the claimant was noted to have improved mood and affect reported having returned to "previous level of functioning" after she "went back on Zoloft" (Exhibit 8F/8-10).

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the evidence of record demonstrates a higher level of functioning than alleged. The evidence documents the claimant's desire to obtain employment in a field that requires a high school diploma and that her vocational rehabilitation application was closed so she could complete her educational goals (Exhibit 15F). Furthermore, while the claimant testified that she left her job at Wal-Mart largely due to factors involving her inability to maintain the job from a mental standpoint, the record notes that she left her job to move in with her sister and babysit (Exhibits 1F, 2F, 11F). The claimant testified that the aspect of her job at Wal-Mart that caused her anxiety was primarily related to interaction with customers. There is no indication in the record of poor job performance or that the claimant received any disciplinary action. In addition, the evidence indicates that the claimant was capable of caring for her sister's young child while her sister was at work reporting to her therapist that babysitting her nephew was not stressful (Exhibit 8F/33). In addition, the claimant reported being capable of managing her finances, shopping, driving, preparing her own meals and performing basic household chores (Exhibit 9E). She also spends

> time playing computer games, watching television and drawing (Exhibit 17F/1). The claimant's ability to participate in such activities undermines the claimant's allegations of disabling functional limitations. Further, the evidence in the record, including the testimony of the claimant at the hearing, shows that she was able to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Moreover, she presented to the hearing as polite, cooperative and did not display any problems interacting with the other participants or answering questions.

(ECF No. 12, PageID #: 111).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Claimant raises one issues on appeal. Claimant argues that the ALJ's finding that Claimant is capable of a range of unskilled, low-stress work is not supported by substantial evidence because the ALJ erred in evaluating Dr. Vellanki's opinion. (ECF No. 13 at 13–15).

1. Weight of medical opinions[1]

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical

[1] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

Dr. Vellanki treated Claimant for nineteen months and provided two check-box opinions regarding Claimant's functional abilities. The ALJ concluded that Dr. Vellanki's opinions were not persuasive explaining that:

> Dr. Vell[a]nki indicates significant functional restrictions that are not supported by or consistent with the evidence. While the record does reflect the claimant's difficulties with social interaction, the evidence indicates that claimant is capable of interacting with her family and perform[ing] activities of daily living that require greater functional ability than that expressed by Dr. Vell[a]nki. His own treatment notes indicate the claimant tolerated her medication

> and experienced stabilization and improvement of symptoms (Exhibits 9E, 12F, 13F, 14F, 17F).

(ECF No. 12, PageID #: 113).

Claimant asserts that if the ALJ had properly analyzed Dr. Vellanki's opinions using the five factors outlined by the regulations, they would have been given greater weight. Claimant first argues that Claimant did not experience stabilization and improvement of symptoms with treatment. Claimant alleges that she consistently struggled with anxiety and panic attacks that did not improve. Moreover, Claimant states that Dr. Vellanki had a treating relationship that lasted nineteen months and his opinions are consistent with Claimant's therapist, Ms. Yang, who also continuously observed extreme anxiety. The Commissioner responds that the ALJ properly evaluated Dr. Vellanki's opinions, asserting that the check-box opinions are not properly supported. The Commissioner also states that Dr. Vellanki's opinions are not consistent with the record evidence, such as Claimant's ability to interact with her family and other activities of daily life.

As discussed above, an ALJ is only required to discuss the supportability and consistency of a medical opinion. If the ALJ discusses both of those factors and her discussion is supported by substantial evidence, the Court may not disturb her findings. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) ("[The] court's review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."). Here, the ALJ clearly discussed the consistency of Dr. Vellanki's opinion. She stated that Dr. Vellanki's opinions were inconsistent with Claimant's daily activities. There is substantial evidence to support this finding. Dr. Vellanki opined that Claimant had extreme limitations in adapting or managing herself and interacting with others. However, Claimant was able to care for young children, attend her therapy sessions with a cooperative

behavior, prepare meals, drive, grocery shop, and perform other household chores. She also maintained a job at Walmart without receiving any disciplinary action or any record of poor performance. She left the job to move in with her sister and take care of her infant child. More recently, Claimant has indicated a desire to obtain her GED and find a job in information technology. These activities are inconsistent with a finding of extreme limitations in adapting or managing herself and interacting with others and provide substantial evidence for the ALJ's finding of inconsistency. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" (citations omitted)).

As for supportability, the ALJ stated that Dr. Vellanki's significant functional restrictions were "not supported by" the evidence. (ECF No. 12, PageID #: 113). She explained that Dr. Vellanki's own treatment notes indicate that Claimant tolerated her medication and experienced stable symptoms. Moreover, Dr. Vellanki's opinion was a check-box form. Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion. *See Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan 12, 2018) ("Numerous decisions have found that the use of checklist or check-the-box forms in which the doctor provides little or no accompanying explanation for the assessed limitations . . . are unsupported and, therefore, the ALJ may properly discount the treating source opinions." (citing *Kepke v. Comm'r of Soc. Sec.*, F. App'x 625, 630 (6th Cir. 2016))); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (stating that check-box opinions are "weak evidence at best" (citations omitted)). This is true "even when the ALJ did not specifically call attention to it in the decision." *Marks*, 2018 WL 1801609, at *8. The Sixth Circuit

Court of Appeals concluded that an ALJ's failure to provide good reasons for discounting a treating source's check-box opinion is harmless error. *Hernandez*, 644 F. App'x 468, 474–75; *see also Marks*, 2018 WL 1801609, at *8 ("Other courts have concluded the same, noting that 'even if the ALJ failed to provide good reasons' for assigning little weigh to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis." (citations omitted)). Here, although the ALJ did not explicitly state that she discounted Dr. Vellanki's opinion because of its check-box form, her failure to do so was harmless because it is clearly established that such opinions are not supported by the evidence. The Court, therefore, finds that the ALJ properly determined that Dr. Vellanki's opinion lacked supportability.

While it is true that Dr. Vellanki had a long-standing treatment relationship with Claimant, this is only one factor in favor of Dr. Vellanki's opinion and the ALJ was not required to discuss it. *See* 20 C.F.R. § 404.1520c(a). The ALJ is no longer required to defer to a claimant's medical sources. *See id.* § 404.1520c(b)(2). Instead, the ALJ found that the two most important factors, consistency and supportability, both weigh in favor of discounting Dr. Vellanki's opinion. The ALJ provided sufficient evidence to support this finding. It is not the Court's job to reweigh the evidence. Accordingly, the Court finds that the ALJ's discussion of Dr. Vellanki's opinion satisfied C.F.R. § 404.1520c and was supported by substantial evidence. There is, therefore, no compelling reason to disturb the ALJ's decision. *See Harris v. Comm'r of Soc. Sec.*, 2:20 cv 4356, 2021 WL 3615721, at *8 (S.D. Ohio Aug. 16, 2021) (affirming the ALJ's decision where "the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements of §§ 404.1520c and 416.920c" and "the ALJ's supportability and consistency analysis was supported by substantial evidence").

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 28, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).